May it please the Court, my name is David Abney. I'm here today on behalf of Plaintiff Appellant Brett Smith. The older I get, the more I appreciate that you need to have things like protocols, guidelines, instructions, practices and policies that you do when you get into a ticklish situation so you know what to do. You don't just sort of take it on the fly, get exasperated and decide I've had enough, I'm going to do this my way. And here the police officers reached a point where they'd had enough. They were trying to deal with Brett. He was in a bad way. He was drunk. He had made suicidal statements. There were firearms in his house. They arrived to deal with the situation. So they got him disarmed. They got him inside the house. They peacefully handcuffed him. They sat him down and started talking with him. They had the paramedics take a look at him. But before the paramedics took a look at him, they took the handcuffs off. I don't know why. It doesn't seem like it would be necessary for this kind of examination to take him off, but they took him off. And after the paramedics said, yeah, he should go in for evaluation of care at some sort of mental health facility, then they decided to talk with him some more to try to persuade him to go peacefully with them. So, counsel, you can be assured that we know the facts of the case. But what I wanted to ask you is whether or not you are of the view that it's the law that in an excessive force case or police practices case, a police, a use of force case, that the court is required to give weight to a police practices expert statement. Yes. Okay. Tell us what case says that the district court has to give, what weight the district court has to give to a police practices expert declaration or statement or opinion. What case says that? Your Honor, I may have to wait until rebuttal to point it out to you. I know I put Okay. That's right. I don't want you to I know I put several in the opening brief. Right. But the difficulty I have with that is that the district court has to determine what is reasonable. And the police practices expert cannot make that determination. Do you agree with that, that it's not the — within the realm of the police practices expert to tell the district court what's reasonable and what's not reasonable? It can tell the district court what practices are, what best practices are, what the procedures were in the — in the department at issue, but can the expert tell the district court what was reasonable? In the sense — no, not in the sense of — The ultimate determination. There you go. That's it, exactly. But the police practices expert is there to help inform the court and, if possible, inform the — or, in fact, the jury about what proper police practices would be in a situation of this nature. You know, do you need to calm down? Do you need to take time? Do you need to wait? Do you avoid using force, if at all possible? These are policies, practices, and procedures. And he wasn't just pointing to one. He pointed to a whole panoply of things. But the district — I mean, our cases say that violation of a policy does not necessarily equate to a constitutional violation. Would you agree with that? Correct, but — Okay. And so the district court was free to listen to the expert, to weigh it, and then decide reasonableness based on everything that was presented to the court. Would you agree? To a point. Okay. But to what point? The point is, when can — when could reasonable minds differ on the fundamental issue of whether the force was reasonable or not? Isn't that a jury determination, a question of fact for the jury? Not necessarily. If the evidence is such that it only points in one direction, the district court can make it as a matter of law. Exactly right. And my position is that this doesn't point just in one direction. You not only have the — you have the police practices expert, of course, but you also have common sense about what was going on here. They had successfully handcuffed this gentleman. They had successfully gotten control of the situation. All they had to do was have the paramedics look at him, say, well, sure, he's drunk, and he's — we've heard he's saying suicidal things, and, you know, he needs to go. And then they unhandcuffed him and set up this whole situation where they had to worry about, well, if we're going to handcuff him again, is he going to cooperate? And they didn't — they didn't wait. They didn't slow down. They didn't let him come back to where he had been originally, where they were able to handcuff him. Instead, they pushed that, and they weren't supposed to do that according to general policies, practice, procedures, protocols, guidelines, whatever you want to say. The expert really covered the universe here, saying that this is — this is bad. But the excessive force claim has to be determined in light of all the circumstances at the time the force is applied. And the fact that 30 minutes earlier they made another mistake that, you know, created a risk that they then had to deal with isn't a basis for saying that it's excessive force. But it's all one event. And it's all one event that took place over a fairly short period of time. But at the point they decided — I mean, were they supposed to wait there for hours until, you know, he sobered up? Or at some point it was clear he had to go in. Yes. And so they — you know, they were very patient with him, and they tried — and they accommodated a lot of his requests. But at some point, you know, he's got to go. Your Honor, I couldn't agree with you more. There comes a point — But then — and then he became — at that point, he became resistant and belligerent. He was. And then they gang-tackled him down, and he fractured a knee. But — and I agree with you. I couldn't agree more with you. There comes a point where enough is enough, and you have to take things under control. But where that point is, is a question of fact. You can't — you can't just take these things away from the jury, especially in a situation like this, where you have — you have a — you have a unique situation. They handcuffed him peacefully. They examined him. They decided they need to re-handcuff him. They set up this whole tragedy to begin with, because they didn't need to un-handcuff him for any of this. And then you get to the point, well, did you do enough? And the expert says, you know, according to policies, guidelines, practices, and procedures, there should have been some more going on here. There should have been more patience, more distance, you know, more of an opportunity. Is he right or wrong? That is a question of fact. So many — so many times, these cases get derailed. And I understand — the trouble is, and the glory of it all is, of course, is that judges deal with this sort of stuff all the time. And they slip into the role of becoming the trier of fact, when they should distance themselves a little bit and stay in the role of saying, well, look, could reasonable jurors say that there is something here about the reasonableness of what was going on, that what the officers did was unreasonable, given the totality of the circumstances, and let the jury decide that? What specifically is unreasonable? Well, that's the question. In the — in the use of force, because there is — the use of force is a discreet event. So setting aside all of your remarks regarding what they could have done or should have done preceding that, at the moment of the use of force, what was unreasonable? Unreasonable to effectively tackle him and push him down hard so that he banged his knee. They could have kept him upright, I submit. The reasonable jurors could have said they could have kept him upright and still handcuffed him. Or hustled him out to the car and handcuffed him outside, where maybe they had a little more distance and space to handle things instead of being in cramped, confined quarters. It's clear from the video that they were really struggling. And he was not cooperating in trying to get the — the right-hand handcuffed behind his back. And, you know — He was a big man. I think the — the district court was a little lenient in — in inferring, because I — I didn't see a push in the video. I just — I just didn't see it. But the district court assumed — let's assume that he was deliberately pushed down. And then why would it be unreasonable in this circumstance? And then why would it meet the test for qualified immunity that every reasonable officer would know you can't do this? That you can't push down a, you know, drunk, belligerent, large person who's resisting being handcuffed. It — Your Honor, I think it all depends on the circumstances. You had an overwhelming number of police officers here. This could have been handled in a way where he didn't get thrust down and break — and break a — and break a knee. And I think that the answer — the fundamental answer is the jury gets to decide. What evidence in the record shows that he had a broken knee? Is there any — I mean, obviously, he had treatment. Are there any medical records? Were they put — I don't think there's anything firm in the record other than it seems to be the operating assumption of the district court and everybody else that there was a fracture. Were those produced in discovery? Why did they not make it into the summary judgment record? I don't know why it wasn't documented better. It's just — it's one of those things that seems everybody assumes he did. It's the only item of testimony that he broke his knee — his own claim that he broke his knee? Is that his deposition? That's the one I can remember, which would be — it is evidence. And they objected on foundation to that, because he — what foundation does he have? I mean, it's hearsay from some doctor. We don't know what the doctor said. And he doesn't have any foundation to say what type of — because — what type of fracture it was? I think that patients have a foundation to talk about their health conditions. I think that's a pretty general accepted principle of evidentiary law. If somebody says, did you have a cold? Yes. Did you break your leg? Yes. And, I mean, it may not be ironclad, but it's still evidence. So there would be some evidence in front of the court. And the court certainly acted on that assumption. But when you're getting to the — not that there was an injury, but when you're getting to more granular claims about the extent of the injury, usually the case law suggests there has to be medical evidence to back up those claims, and it isn't in this record. I would have liked stronger evidence. But at a minimum, we know that he said he hurt his knee. And certainly he's competent to testify whether he experienced pain or not from this event. So at a minimum, he was injured to the extent of suffering pain, and probably to the extent of having a fracture. But the whole point that I have here, which may or may not win, is that you have a situation where there's policies, practices, and procedures designed to prevent this sort of thing, and they weren't followed. Well, counsel, on that point, in order to have Monell liability against the police department and the sheriff's office, there has to have been a policy, practice, or custom that they were operating under. And it sounds like you're saying the opposite, that they were not following a policy, custom, or practice that was imposed on them. Correct. They were not. There were policies, practices, and procedures, and they didn't follow them. Okay. It seems to me that you lose, then, against the sheriff's department and the police department under that. I am in difficulty on that issue, Your Honor. Okay. Yeah, I thought that coming into the argument, but. It's very perceptive. Okay. If I may reserve my remaining time. All right, and if I could just ask a follow-up on Judge Collins' question. Yes, Your Honor. On qualified immunity, then, what's your response there, that every officer, reasonable officer, would have known you can't do this? Every reasonable officer would know you're not supposed to use excessive force when you're handcuffing. You're not supposed to put on handcuffs in a way that causes injury in the process to the suspect. Okay. Thank you. Thank you, counsel. We'll hear from the city, the town. May it please the court. The court's questions just now really illuminate the lack of merit to the appeal. The issue here is force, whether or not it was reasonable under the Fourth Amendment, and the test is objective reasonableness. Graham v. Conner makes that clear and makes it explicit. That's the very point of Graham v. Conner. Summary judgment was proper, and this court should affirm summary judgment in favor of all the defendants. The issues are whether or not the force was objectively reasonable under the totality of circumstances, and equally meritorious is that all of the defendants are protected by qualified immunity. The court's questions, particularly Judge Collins, made it clear that the issue of probable cause to take into custody under Title 36, ARS 36-525, is a given. It is admitted that they had the right to take custody. So given that they have the right to take custody, we look right to Graham and also Scott v. Harris. And once you have the right to take custody, by definition, there is a level of force that can be used to take somebody in custody against their will, involuntary. That's what is involved here, taking custody. When they resist, police are allowed under the Fourth Amendment to use a higher level of force, provided that it is objectively reasonable. And the district court founds that the level here was moderate, and there's even a case in this circuit, the Adone case, Adone v. Sanford, that says this type of force is moderate. Well, I mean, if you're thrown down with enough force onto your knee to break the knee, that doesn't sound very moderate to me. But that's not the case here. As you already said, when the district court gave just allowing, construing the evidence and inferences in the light most favorable to Mr. Smith, push. You didn't see that. Well, if you didn't see that, a forciare, you did not see throwing down. And that was what was clearly rejected. That was really how the district court handled this, is that the best I can say is that these videos clearly show, in other words, we said he fell on his own actions. District court, as you said, was generous, saying maybe there's a push, maybe there's a pull. But what there's clearly not, and that takes you right into Scott v. Harris, is that there's not this throwing down. That would be a higher level of force. Also, we would argue that that would also be reasonable, but we don't have to go there, because the video evidence is what is so clear here. So when you look at the reasonableness of Graham, and we all know, and these are very important principles when it governs police conduct, we judge officers on the scene in the moment they're acting, not in hindsight with 20-20 scrutiny, like we're in some laboratory. We have to allow for police to make judgments, and they act in split-second moments that are often, as the district court found, triggered by resistance, which is also not contested here. So they admit probable cause to take into custody under Title 36, and resistance. So now in resistance, you have, in this split-second moment, the tense, uncertain, and rapidly evolving circumstances that is one of the hallmarks of Graham. And so then you look to what Scott said, and you see a lot of their argument, it really is misplaced. It's not that the court is somehow making, at the district court level, a credibility assessment on their expert. It's that it's, as the court's question showed, it's just not relevant. What's relevant here is the level of force that's used. That's the Fourth Amendment inquiry. We're not talking about whether you complied with policy or procedure at this level. When you have a record like this, where with video evidence, and that's why Scott v. Harris is so important here, because that video evidence shows that you don't have the throwing down. And so what you have is a moderate level of force that is reasonably, objectively appropriate for this moment in time, because he's actively resisting. And this is what you said. He's really struggling. I mean, if I quote the court's questions back to you, it makes the case to affirm summary judgment. Really struggling. He is not cooperating. And they did not tackle him. See, that's where the video, and although that would fit within the range of what's reasonable in our assessment and argument, we don't have to go there because the video refutes that. And so that's the totality of this record. And then when you look to Scott. The video does not make clear why everyone goes down. It just, it's not clear why it happened. You don't really have a front row seat to really see. You just see that he goes down. I mean, you don't see like some sort of shove or violent slam down, but he goes down. And some of them, you know, lean forward as well. But as you, respectfully, as you said in your questions to Apollon's counsel, what it does not show is something that would be excessive. They have the burden of proof. I mean, we move for summary judgment, but we showed through the evidence, through not just the testimony of the involved officers, but that video evidence. And what they've tried to do is they've tried to make up facts. And I don't say that in a negative way, but they speculate. And we have hard evidence. And the video clearly does not show a throw. You cannot see that in that video. And there's two videos from two angles. Admittedly, their angles are close, but as is often the case with body cameras, when you get close in, it's usually another officer's body camera that helps see what individual officers are doing. And you don't, you just don't see that. So again, you would have to somehow leave it to a jury on this record to confront. And I don't believe that, again, respectfully, I would phrase it the way you did to counsel, that you just don't see it. And there's not even the push or pull. But how could a jury then be asked to speculate? I mean, you just don't get there. This video evidence is clear when it comes to what did not happen. And what did not happen is objective excessive force. It's objectively reasonable. Let's also talk about that Harris, Scott v. Harris, in footnote 8 says this is a pure question of law. It's a very significant part of Scott v. Harris because it is for the court. It's not for an expert. And respectfully, both sides have pleased practice as expert. They're hired. They're hired to give opinions. But under Rule 56, we're here to review the facts. And the facts have to be based on admissible evidence. Now, we do take issue with the fact that they submitted an unsworn report to this court. I mean, that's just hearsay. And to address your question, Your Honor, about Monell, Monell's not in this case. They don't contest Monell. So when you go through a lot of the opinions that were offered by their police practice expert, he's talking about what supervisors should do and how training under proper policy, you don't have a Monell claim. You don't have a Monell claim because of some unconstitutional custom, policy, or practice. And you do not have a Monell claim for supervisory liability. And so you certainly don't have an underlying constitutional claim that they've established. So that's the condition proceeding team in reaching Monell. But Monell's already been resolved. Summary judgment was granted. They're not disputing. It's not an appeal. But your question to him is very indicative of why this record is so strong for you to affirm. Because what we're dealing with is the objective reasonableness under the Fourth Amendment of the force used at the moment they used it, which, again, is moderate. Now, what is — what else do we have here? We have uncontradicted testimony and findings that they don't contest, that Smith, in his resistance, grabbed, squeezed, and bent the fingers of Sergeant Johnson. That's active resistance. That factor — and again, we always look at the totality of factors, but that's a huge factor. You don't have someone that's just sitting there in a typical passive case. You have someone like you said, Your Honor, he's actively resisting, he's really struggling, and he's grabbing and bending fingers of a police officer who's simply trying to take him into custody and put cuffs on him. That's the level of force here. Moderate, low moderate. Objectively reasonable. Let me also suggest something that I think is very significant. And we made this argument in the district court. It's not part of the district court's opinion, but when you make a constitutional claim, it is the plaintiff's burden to put the case on each individual defendant. Now, there's no basis for any claim against any defendant, but they do have an obligation to make a case, a constitutional claim, against each individual. You have about six officers that are named here, and they don't distinguish who did what. And if I go back to your question earlier about what is unclear about the video, and certainly there's nothing unclear about the moderate level of force, but where do they ever make the claim against any particular officer? And since they can't do that, it's another reason to affirm for this court. And we did present it in the district court, and it's certainly a basis here for this court. Now, when you get past that aspect, there's qualified immunity, which they can't get around. And qualified immunity is controlled by the Casella case. The Casella case came down in 2018, and the Casella case makes it very, very clear that we don't use these general pronouncements of police shouldn't use excessive force in a Fourth Amendment claim. No, no, no. That's not how you have to establish it, and he's already pretty much conceded the argument to one of the court's questions. What you have is, you have no case law that is supporting excessive force in this case, such that an officer would be on notice that this is unreasonable to try to handcuff someone in this moment, that they bring out a second handcuffs, so they're trying to just create a little more length in the handcuffs to get them. There's no case that supports their position that an officer would be on notice, or anyone other than the plainly incompetent. Right? Isn't that the standard? It's such an important standard that qualified immunity protects all police officers other than the plainly incompetent, or officers that act knowingly in violating people's rights. That's not this case here. This record is so strong that, as you said, the police are there for a very long time, and then there's a point where it's time to go. They try very hard to get him to go voluntarily. That's their mission. That was Sergeant Johnson's plan. He had his five or six point plan. But then, ultimately, it's time to go. And they say, we want to put handcuffs on you. He's really struggling, again, to use your words. He's resisting actively, and they cuff him. And then, once they cuff him, there's no more force. They get up, take him to the patrol car, and ultimately to the police station, and ultimately. It's the issue of whether they made him put weight on the leg. As the district court found, that's not. You can look at that video, all the videos, and you won't see that. They are assisting him. They are dragging him. But the key point on that, and now you went into the other issue that he didn't argue right now, but I'll address it, which is the medical aspect. So there's two aspects to that. One is, did they have him put weight on a leg where you would say it's unreasonable for them? Because there's nothing that says that they would know that at the time. So, again, we judge this from objective reasonableness of the officers acting in the moment. And there's no injury that you could say was caused by whatever weight or not weight is getting him to the car. And there's certainly no evidence that a delay, which was, what, a five minute delay? They take him to the police station, ultimately paramedics see him immediately, and then he's taken to the hospital. And there's no evidence in this record. I mean, you question whether there's any evidence at all about a broken leg. And if we rely on this record, but there's certainly no causation. Did you seek in discovery the hospital records from that visit? We did. No one put them in the record? They did not. And I'm... You didn't put them in response? I personally did not. I can tell you that I'm accepting what the allegation is. But records do exist, but nobody... It's not in the summary judgment record. Record is silent as to what they say. It's not before this court. But even if you accept that, it's a one sentence aspect, he had an injured leg, okay? No evidence that either weight being put on it caused a greater injury or an aggravation of injury. And no evidence that a five minute delay in driving him to the police station first and then to the hospital caused any additional injury. So that claim clearly fails. It fails under both that it's not excessive force, there's nothing objectively unreasonable about what the police did in these, again, tense, uncertain, rapidly evolving circumstances. And there's no case that would support them. So qualified immunity would also protect that aspect. I've got 39 seconds left, and I just want to point out, when you look at the three issues that they frame per appeal, candidly, they're not the correct issues. We've already addressed the expert. And standard care and breach isn't the issue, and they have no cases to support qualified immunity. What this case is ultimately about is that with the video and with the totality of the record, this question of law that you're going to decide should be decided just like the district court. It was objectively reasonable under the totality of circumstances. And equally true, all these officers, notwithstanding what I've said, that they can't put the case on any individual officer. All these officers are protected by qualified immunity. And so we ask you to affirm summary judgment. All right, thank you, counsel. Otto. One thing I like about oral arguments is the last place in America you can go and tell somebody they're full of beans and do it politely and not have somebody hit you for it. It really is a question for the jury to decide whether there was a reasonable amount of force that was used. The court asked about precedent on using reports. There's the Mellon case, M-E-L-L-E-N, Mellon versus Winn, W-I-N-N, Mellon versus Winn, 900, Fed Third, 1085, 1104, 9th Circuit, 2018. And the court said that a police practice expert report should have been admitted to assist the trier fact in determining whether the conduct deviated so far from institutional norms that the jury could conclude that the defendant was reckless or deliberately indifferent. The Mellon case cited and relied on a Seventh Circuit case, Jimenez versus City of Chicago. That's even better as far as the language. It says, expert testimony regarding relevant professional standards can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional right. Now jurors don't know really what police officers are supposed to do. They see things in television and movies that are just heartbreaking. You know, excessive force, knock them down, step on them, kick them, handcuff them. And this is the way you're supposed to treat people that are suspects. This is how you're supposed to do it. They really need to have police practices experts to say, no, these are the guidelines you're supposed to follow, protocols, procedures. And, by the way, take a look at this town's own guidelines, its own policies. All of these things were violated in this particular case. It's really up for the trier of fact to decide. As far as the injury on the district court did acknowledge lack of clarity as to whether it's exactly what happened, but construed it that they collectively pushed or pulled Smith forward. Sotomayor, I have to say, I'm very puzzled. The records exist. We now know that. And you didn't give them to the district court. When you were claiming what the injuries were, why? Not for that fracture. I don't know. You know, lacking, I don't know why they didn't go get the records and put it into the record. But at the minimum, even the district court acknowledged that Smith's yell as he went down also supports Smith's, that Smith struck his knee on the floor before going all the way down. So there's evidence he hurt, he got hurt. The extent of the hurt is a question. And that would really go to the jury saying, well, we'll give you a dollar for your injuries or we'll give you $100 or $1,000 or whatever it may be. I mean, that really goes to the amount of the damages more than anything else I submit. I'd love any more questions. If not, I've used my time. Thank you, Your Honor. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for the morning. We are on recess until 930 a.m. tomorrow morning. All rise. This court for this session stands adjourned.
judges: RAWLINSON, COLLINS, Fitzwater